UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-CR-0323(2) (PJS/DTS) |
| Plaintiff, | |
| v. | ORDER |
| MARQUICE SHAQUAN MORRIS, | |
| Defendant. | |

Matthew D. Forbes and Harry M. Jacobs, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Aaron J. Morrison, FEDERAL DEFENDER'S OFFICE, for defendant.

Defendant Marquice Morris was convicted by a jury of one count of conspiracy to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. This matter is before the Court on Morris's motion for acquittal or, in the alternative, a new trial. For the reasons that follow, the motion is denied.

I.  ACQUITTAL

Under Fed. R. Crim. P. 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  In considering a Rule 29 motion for acquittal, the court must view the evidence in the light most favorable to the government, resolve all evidentiary conflicts in the government's favor, and accept all reasonable inferences that support the jury's

verdict. *United States v. Cook*, 603 F.3d 434, 437 (8th Cir. 2010). The motion should be granted only if no reasonable jury could have found the defendant guilty. *Id.* Where the government's evidence alone is equally consistent with innocence as with guilt, the court must direct an acquittal. *United States v. Janis*, 898 F.3d 847, 849–50 (8th Cir. 2018). But if the evidence as a whole supports conflicting inferences, the court must allow the jury's verdict to stand. *Id.* at 850.

Morris moves for acquittal on two grounds: (1) that the evidence was insufficient to prove that Morris voluntarily and intentionally joined a conspiracy to distribute fentanyl; and (2) that the evidence was insufficient to establish that Minnesota is a proper venue in which to prosecute him for that offense. The Court considers each ground in turn.

*A. Conspiracy*

On October 2, 2022, Morris' codefendant, Brandon Johnson, was arrested for possessing a large amount of fentanyl. Trial Tr. ("TT") 102. The fentanyl was found in a duffel bag during a search of a Greyhound bus that had stopped in Texas en route from Arizona to Minnesota. TT 32–41, 222–23.

At trial, Johnson testified that Morris recruited him to fly with Morris to Phoenix and bring drugs back to Minnesota on a Greyhound bus. TT 127, 131–33, 210–11. Morris purchased the plane tickets for the Arizona flight, arranged for a ride from the

airport, and rented a home in which Morris and Johnson stayed. TT 128–30, 137. Morris's girlfriend purchased Johnson's bus ticket, and Morris sent Johnson the ticket. TT 133, 149, 170; Gov't Ex. B3. Johnson borrowed a duffel bag from Morris so that he would have enough room for both his clothes and the drugs. TT 210. The day after Morris and Johnson arrived in Arizona, Morris left the rental home and came back with packages of pills. TT 142–44. Morris gave the drugs to Johnson, who wrapped them in dryer sheets and clothing and put them in the duffel bag. TT 144–45. Johnson was supposed to deliver the drugs to Morris in Minnesota. TT 145. As noted above, however, law-enforcement officers arrested Johnson in Texas after the drugs were found on the bus.

Morris argues that this evidence is insufficient to prove that he was part of a conspiracy to distribute fentanyl, pointing to Johnson's various inconsistent statements and contending that the Court should essentially ignore Johnson's testimony because it lacks credibility. Credibility assessments are for the jury, however. *United States v. Hassan*, 844 F.3d 723, 726 (8th Cir. 2016) ("In evaluating a motion for judgment of acquittal, we cannot pass upon the credibility of witnesses or the weight to be given their testimony, as this is uniquely within the province of the trier of fact, and entitled to special deference."). As a reasonable jury could have believed Johnson's

testimony—and as that testimony was sufficient for the jury to convict Morris—Morris's motion for acquittal on the basis of insufficient evidence of conspiracy is denied.

### B. Venue

Morris next argues that there is insufficient evidence that venue is proper in Minnesota. In criminal cases, proof of venue is an essential part of the government's case. *United States v. Lopez*, 880 F.3d 974, 982 (8th Cir. 2018). Venue is ordinarily a question of fact for the jury and need be proved only by a preponderance of the evidence. *Id.* "A federal crime may be prosecuted in any district in which such offense began, continued, or was completed." *United States v. Banks*, 706 F.3d 901, 904 (8th Cir. 2013). "In conspiracy cases, venue is proper in any district where any conspirator commits an overt act, even if other conspirators were never physically present in that district." *Lopez*, 880 F.3d at 982 (citation and quotation marks omitted)).

Johnson testified that he believed he was in Minnesota when he learned of the plan to pick up the drugs. TT 211. This testimony is corroborated by other evidence: On September 24, Johnson told Morris that he was in Minnesota, Gov't Ex. B1 at 2, and Johnson and Morris's flight to Arizona was on September 30, TT 133–35, 294. On September 27, a few days before the flight, Johnson searched for the drive time from Arizona to Minnesota because he wanted to know how long the bus trip back to Minnesota would take. TT 131–32; Gov't Ex. B4. Morris told him that he would be

taking the bus back because he would be bringing drugs with him.  TT 132.  The most natural inference is that Johnson knew of this plan at the time that he checked the drive time; it is implausible that Johnson would agree to spend so much time alone on a Greyhound bus with no explanation.

Morris points to Johnson's testimony on cross-examination that, at the time he and Morris boarded the plane, there was as yet no conspiracy.  TT 196.  In context, however, this testimony is equivocal, as Johnson may simply have been affirming that he had originally told law enforcement that the plan was just to spend some time in Arizona:

> Q. I mean, yet, you testified today when they asked you, what were you going to Phoenix for, "I thought we were just gonna kick it," I think was your testimony. Do you recall testifying about that earlier this morning?
>
> A. Yeah.
>
> Q. You didn't have a plan with Mr. Morris when you got on the plane to Arizona.  You're just gonna go kick it, right?
>
> A. Yeah.

TT 196.  On redirect, however, Johnson clarified that he believed that he was in Minnesota when Morris asked him to act as a drug courier.  TT 211.  Combined with the corroborating evidence mentioned above, this was a sufficient basis for the jury to find,

by a preponderance of the evidence, that the conspiracy began in Minnesota. Morris's motion for acquittal is therefore denied.

II. NEW TRIAL

Under Fed. R. Crim. P. 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." "In ruling on a motion for a new trial, a district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Collier*, 527 F.3d 695, 701 (8th Cir. 2008). But a motion for a new trial should be granted only where "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* (citation and quotations omitted). The court's authority to grant a new trial on the basis that the verdict is against the weight of the evidence must be "exercised sparingly and with caution." *Id.*

As discussed above, Johnson's testimony provided ample evidence to support the jury's verdict that Morris was guilty. While Morris argues that Johnson was not credible, Johnson's testimony was powerfully corroborated by the evidence of Morris's own texts and phone calls while Johnson was on the Greyhound bus and later in custody. The texts show Morris carefully tracking Johnson's progress on the return journey and repeatedly asking if everything was okay. TT 274–75; Gov't Ex. B1 at 26–31. After Johnson was taken into custody and stopped answering texts, Morris tried to call him numerous times in quick succession. TT 273. Morris also sent texts

berating Johnson for leaving the duffel bag on the bus and mentioning the police.  Gov't Ex. B1 at 36–37.

While in custody, Johnson agreed to participate in recorded phone calls with Morris, and those phone calls further corroborate Johnson's story.  Most damningly, Morris said, among other things:  "this is my life on the line," "[i]t's not just my money behind this shit," "You had me thinking [police] fucking took this shit . . . . You should never have said that you was gonna do it, bro. . . . I worked hard as hell for this shit.  And it's not just my money," and "this is the shit that we do . . . to live a better life."  TT 77–78, 80, 82.  Morris also repeatedly demanded details of when and where the bag (which Johnson had told him was still on the bus) would arrive at the next stop in Oklahoma and how Johnson would retrieve it.  TT 74–79, 81–82.

Morris points to evidence that he was in Arizona to work on his music career.  He contends that these calls and texts demonstrate his concern that he might be implicated in Johnson's scheme and show that he was trying to distance himself from Johnson.  This explanation is not plausible, however, as one would expect Morris to distance himself from Johnson by *limiting* his communications with Johnson, not by repeatedly trying to contact him.  Moreover, it does not explain why Morris bought himself a round-trip ticket to Phoenix but only bought a one-way ticket for Johnson, making Johnson spend almost an entire day on a bus back to Minnesota.  Gov't Ex. B3.  Nor does it explain why, even before Johnson started having problems, Morris

-7-

repeatedly checked in with Johnson to monitor Johnson's progress on the bus. The jury's verdict was certainly not against the weight of the evidence.

Morris's motion for a new trial is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion for acquittal or, in the alternative, a new trial [ECF No. 109] is DENIED.

Dated:  August 28, 2023       s/Patrick J. Schiltz  
    Patrick J. Schiltz, Chief Judge  
    United States District Court